Forstall vs. Fussell et als.

## No. 12,447.

### A. J. FORSTALL VS. J. P. FUSSELL ET ALS.

50  249
50  257

In case a promissory note is executed without any consideration actually passing from maker to the payee, and as an accomodation to the payee, for the express purpose of enabling the latter to pledge same as collateral security for an anticipated indebtedness to a third person in pursuance of an agreement to that effect, same in the hands of the latter can be realized upon, against the maker to the extent of the secured indebtedness of the payee and pledgor and no further.

The forbearance of the creditor to institute suit against his principal debtor for the recovery of the amount due him is not such a prolongation of the terms granted to the principal debtor as will operate the discharge of a surety, in case he has not given his consent thereto, as the Code contemplates.

APPEAL from the Sixteenth Judicial District Court for the Parish of Washington. *Reid, J.*

*Frank N. Butler* and *Clay Elliott* for Plaintiff, Appellant.

*Saunders & Miller* for Defendants, Appellees.

Argued and submitted December 31, 1897.
Opinion handed down February 21, 1898.

The opinion of the court was delivered by

WATKINS, J.  Plaintiff instituted suit and prayed for judgment against the several defendants *in solido* for the sum of ten thousand dollars with interest upon the following obligation, viz.:

" $10,000.          FRANKLINTON, La., December 18, 1890.

" On the 15th of December, 1891, we jointly and severally promise to pay to the order of the Farmers' Union Commercial Association of Washington Parish, La., Limited, at the American National Bank,

Forstall vs. Fussell et als.

New Orleans, La., the sum of ten thousand dollars, with interest at the rate of eight per cent. per annum from date until paid, for value received.

(Signed)    " J. P. Fussell.

" A. J. Johnson.

" P. B. Carter.

" W. C. Binfield.

" H. J. Simmons.

" W. P. Crain.

" W. L. Smith.

" W. T. Williams.

" J. Leon Pounds."

The averment of the petition is, that for a valuable consideration he acquired in pledge from the Farmers' Commercial Association of Washington Parish, Louisiana, Limited, the aforesaid note.

One of the defendants excepted that the petition disclosed no cause of action, and *lis pendens*—the latter referring to suit of same title at the time depending in the same court; and two other defendants also tender a plea of no cause of action.

The same three defendants—Fussell, Smith and Crain—fully reserving the benefit of their exceptions, filed an answer and averred that the vote sued on was given under the following circumstances, viz.:

That there was a corporation organized under the laws of the State, known as the Farmers' Union Commercial Asssociation of *Louisiana*, Limited, and another corporation, likewise, organized under the name of Farmers' Union Commercial Association of *Washington Parish*, Louisiana, Limited, of which latter the defendant, J. F. Fussell, was president—the former being a State and the latter a parish organization.

That the defendant, W. L. Smith, as agent of the last named corporation, the payee of said note, opened a general store in the town of Franklinton, and made advances on terms of credit to the various members of said parish union—same consisting of family and plantation supplies. That on or about the 18th of February, 1891, said agent entered into an agreement with the plaintiff, whereby the latter agreed to extend him a credit of ten thousand dollars; and, as collateral security therefor, he delivered the note sued on, together with other notes, to the plaintiff. That the note sued on was signed

and delivered to said agent for the purpose of enabling him to pro-
cure the aforesaid credit with the plaintiff and obtain said advances,
the defendants signing said notes, thereby becoming sureties of the
payee for such advances as were made thereunder.

On this statement the said defendants in their answer allege that
said note is without consideration as to them, they not being indebted
to the payee thereof in any sum whatever, at the date said note
was executed, or at this time. That said note was executed purely
and simply for the accommodation of the payee, and that they signed
it as sureties of said corporation, and that all of said facts were well
known to the plaintiff at the time of and previous to said agreement,
and during the pendency of the negotiations between him and said
agent which led up to its execution, and which were superintended
and conducted by T. A. Clayton, as manager of the State Asso-
ciation.

The defendant avers that, in the course of the dealings of the
aforesaid payee with the plaintiff under said agreement, the latter
advanced the sum of ten thousand six hundred and thirty-two dol-
lars and four cents, on open account, between the 10th of Septem-
ber, 1891, and the 23d of April, 1892; and that during that period he
had received the proceeds of two hundred and forty-one bales of
cotton and other moneys, the whole of which aggregated the sum of
nine thousand dollars and seventy-eight cents, leaving a balance due
of one thousand six hundred and fifty-one dollars and twenty-six
cents by said payee.

That under the law and the aforesaid agreement said credits
should be imputed to the payee's credit on open account, secured by
the note sued on as collateral, and same reduced to that balance.

They further aver that the debt of the payee of the aforesaid note
on open account became due on the 1st of February, 1892, and the
plaintiff, without the consent of defendants, as sureties of his debtor,
prolonged the terms of payment granted it as principal, in fraud
of their rights and to their great and irreparable injury—said exten-
sion of time for the payment thereof having been for a period of
more than six months at one time, and for a greater length of time
at another.

They aver that while professedly all of the signers of said note
have been made parties defendant to this suit, yet, in reality, only
the three of them who join in the answer have been cited by the

request of the plaintiff's counsel; and that the object of such a course being pursued was to deprive them of their rights—that of division and other rights against their co-sureties.

They aver that, at the date of the maturity of the debt, the aforesaid parish association, as payee, had abundant means to have paid the same, but that at this time it has not—it being " defunct and insolvent "—hence they are discharged from all liability to the plaintiff as sureties.

They pray for the rejection of the plaintiff's demands *in toto*.

The cause was tried by a jury, who found a verdict in favor of the defendants, rejecting the demands of the plaintiff; and from the judgment thereon pronounced the plaintiff prosecutes this appeal.

It appears from the record that the note sued on was pledged to the plaintiff, as is alleged in his petition, " to guarantee the prompt and faithful payment of the advances " he had contracted and agreed to make to the payee thereof—said contract of pledge having been made and evidenced by an act bearing date 18th of February, 1891. The act was introduced in evidence, and the exemplifications of the plaintiff's commercial books were also produced and filed.

Many witnesses were introduced and interrogated in respect to the dealings and transactions between the plaintiff and the Farmers' Union Commercial Association of *Washington Parish*, Louisiana, Limited; and each one of them makes a statement in reference thereto.

That association, or corporation, was, as its name implies, organized in the interest of the farmers of that parish and surrounding country; and it established a general store at the the town of Franklinton therein, from which it was contemplated the farmers should be supplied advances to enable them to cultivate and harvest their crops.

In order that this plan should be carried into operation, various members of the association entered into negotiations with the plaintiff, aided and assisted by the president of the State association, and effected an agreement whereby he was to supply advances to the parish association to the extent of ten thousand dollars.

That in order to secure the plaintiff in making said advances the note sued on was executed by the persons whose names are thereto signed—and also another note of similar character which was signed by other members of said association—in favor of the corporation; and same was pledged to the plaintiff as a collateral security for the

faithful payment of its indebtedness on open account to the plaintiff when the same should become due and payable.

The act of pledge recites that "for and in consideration of the sum of ten thousand dollars advanced by the commercial firm of A. J. Forstall to the undersigned, W. L. Smith, agent, of Franklinton, * * * and for the further consideration of services rendered and which may hereafter be rendered by the said A. J. Forstall, and for the purpose of securing him a proper compensation therefor:

"I hereby agree and obligate myself to ship and consign to him for sale at New Orleans, La., not less than eight hundred bales of cotton—said shipments and consignments to be made before the first of February, 1892, and in the event of my failure, or refusal to ship and consign to the said A. J. Forstall eight hundred bales of cotton as aforesaid and within the time specified, and as an additional compensation to him for services in selling the cotton consigned to him under this agreement and other services I bind myself to pay to A. J. Forstall the sum of one dollar per bale on each bale on the number deficient in my shipments, and which are required to make the said number of eight hundred bales."

This much of the act of pledge discloses the mutual agreement of the parties; the engagement of the plaintiff to make ten thousand dollars advances to the corporation as well as its covenant to secure the payment therefor, and also the contingent penalties it consented in his favor in case of either its failure or refusal to ship to plaintiff the full quantity of eight hundred bales of cotton.

Then follows the clause pledging to the plaintiff the note sued on, viz.:

"It is further agreed that in order to guarantee the *prompt and faithful payment of said advances,* the said W. L. Smith, agent, has delivered to said A. J. Forstall a promissory note for the said sum of ten thousand dollars, signed by J. F. Fussell and others, and endorsed by the Farmer's Union Commercial Association of Washing Parish, Louisiana, Limited, and the Farmer's Commercial Association of Louisiana, Limited, which is identified herewith, dated the 18th of December, 1890, and maturing on the 15th of November, 1891."

And it concludes thus:

"It is further agreed that the proceeds of the sale of all cotton sold by A. J. Forstall, for the account of the undersigned, shall be

appropriated by the said A. J. Forstall, either to the payment to the said sum of ten thousand dollars, advanced as aforesaid, or to any other indebtedness or liability of W. L. Smith, agent, to him which may hereafter arise in the course of their business.''

Not one of the defendants were parties to the act of pledge, notwithstanding the fact that they admit that they executed said note for the purpose of enabling the association to employ it as a collateral security for its indebtedness thereafter to be contracted with the plaintiff; and that it was primarily an accommodation paper, and issued without any consideration.

The contention of the defendants, therefore, is that (1) in any event the plaintiff's right of recovery must be restricted to the balance of account it was intended to guarantee; (2) that plaintiff's recourse, by the terms of the contract of pledge, is restricted to the balance which is ascertained to be due for the *advances* the plaintiff made to the corporation, and can not be extended to the alleged damage the plaintiff has sustained on account of any breach of contract by the corporation in reference to shipments of cotton; nor to any commissions, salaries and expenses incident thereto.

To make the position of the defendant's counsel plain, we have extracted from their brief the following, viz.:

'' If this is not so, we would have a consequence not in contemplation of any of the parties, and entirely beyond the agreement, in any view that may be taken. It will be observed that this note was delivered to secure only the money to be advanced, not any breach of contract in relation to cotton shipments, nor commissions, nor agents' salaries or expenses. Undoubtedly the corporation could have redeemed the paper by paying the sum of the advances, and it is equally undoubted that the accommodation makers, irrespective of notice of their character, could have reclaimed their paper on like terms. Yet, if plaintiff's theory is maintained, he can collect the entire face of the note, deduct the sum it was expressly delivered to secure, and then set off, as against the accommodation payee, any other demands he may have.

'' Now, as a matter of fact, the plaintiff is attempting to use this paper to enforce payment of a claim which embraces one thousand and one dollars and ninety-one cents above the amount of advance it was made and accepted to guarantee, and which he pretends to have furnished. This sum being composed of commissions, travel-

ing expenses and salary of an agent (fifty dollars), and five hundred and eighty-two dollars on account of cotton not shipped and insurance money paid for some unknown purpose" (p. 3).

The portion of the act of pledge upon which they rely as sustaining their position is the following, viz.:

" It is further agreed that, in order to guarantee the prompt and punctual payment of said *advances*, the said W. L. Smith, agent, has delivered to said A. J. Forstall a promissory note for the sum of ten thousand dollars," etc.

We think it is apparent from the phraseology of the contract of pledge that the plaintiff obtained the note in pledge as a collateral security for the account of the corporation, in pursuance of an understanding and agreement of all the parties in interest.

The further contention of defendants is that after the maturity of the principal obligation—the note for ten thousand dollars—on the 15th of November, 1891, the plaintiff granted the corporation, their principal, an extension of time for its payment—the association having at the time of said maturity an abundance of assets, which it offered to surrender to the plaintiff, and which he declined to accept; and that during said delay the corporation became insolvent, and its assets perished.

An attentive examination of the evidence has satisfied our minds that this last ground of defence is not sustained by the evidence. It does not go to the extent of showing that the plaintiff granted to the corporation any specific delay, or additional term, for the payment of its indebtedness. It is only to the effect that plaintiff forebore to institute suit for the recovery of the amount due. He would have been at liberty to have sued at any time; and nothing is shown to have prevented the defendants from protecting themselves, notwithstanding the plaintiff's delay in bringing suit.

This case does not come within the rule this court announced in Insurance Company vs. Randall, 42 An. 260.

Nor does it come within the provisions of the Code, viz.:

" The prolongation of the terms granted to the principal debtor without the consent of the surety operates a discharge of the latter." R. C. C. 3063.

Our conclusion is that the record does not disclose a state of facts justifying the discharge of the defendants, but that on the contrary, they are bound by the terms of the agreement and the contract

Forstall vs. Fussell et als.

of pledge. But, as sureties of the corporation, we think them entitled to have that agreement construed strictly in so far as it shall affect their rights, and placing upon it such a construction they can only be held bound for the balance due the plaintiff for the *advances* he made to the corporation and nothing else.

The stated account of the plaintiff against the corporation shows a debit balance of four thousand one hundred and twenty-six dollars and eighty-three cents on the 3d of February, 1893, after allowing proper credits, but applying the rule just stated, we are of opinion that this balance is subject to a further reduction in favor of defendants as sureties of the corporation of one thousand and one dollars and ninety-one cents, thus leaving the sum of three thousand one hundred and twenty-four dollars and ninety-two cents for which they are responsible *in solido* to the plaintiff.

It is therefore ordered and decreed that the verdict of the jury and the judgment thereon based be annulled and reversed; and it is further ordered and decreed that the plaintiff do have and recover from the defendants *in solido* the sum of four thousand one hundred and twenty-six dollars and thirty-eight cents, with eight per cent. per annum interest from the 3d of February, 1893, subject to a credit of one thousand and one dollars and ninely-one cents, as of same date, and all costs of both courts.